UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| NICOLE MANNING, | : Case No. 3:19-cv-289 |
| Plaintiff, | : |
| vs. | : District Judge Walter H. Rice |
| | : Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Nicole Manning brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. She applied for benefits on December 16, 2015, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Deborah F. Sanders concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. #13), and the administrative record (Doc. #6).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Sanders's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since September 17, 2015. She was forty-one years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). She has a high school education. *See id.* §§ 404.1564(b)(4), 416.964(b)(4).[2]

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #6, *PageID* #s 46-59); Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #12); and Plaintiff's Reply (Doc. #13). Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

3

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Sanders to evaluate the evidence connected to Plaintiff's applications for benefits. She did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. She reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since September 17, 2015.

Step 2: She has the severe impairments of degenerative disc disease (cervical spine with spinal stenosis and disc herniation); cervical spinal fusion; history of impingement syndrome and incomplete rotator cuff tear/rupture (right shoulder); obesity; and osteoarthritis of her left knee joint.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work … except: 1) Lifting up to 10 pounds frequently; 2) Standing and/or [w]alking up to 2 hours during any given eight-hour workday; 3) Sitting after 30 min[utes] of standing and/or walking while remaining on task; 4) Sitting up to 6 hours in [an] 8 hour day (alternating every 30 minutes); 5) Frequently climb ramps and stairs; 6) Never climb ladders, ropes, or scaffolding; 7) Frequently balance; 8) Occasionally [s]toop, [k]neel, [c]rouch; 9) Never crawl; 10) Occasionally lift overhead with left arm; 11) Never lift overhead with right arm; 12) Frequently fine manipulation; 13) Never work at unprotected heights, around dangerous machinery, never operate commercial motor vehicle; 14) Avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity."

   Step 4:  She is capable of performing her past relevant work as a clerical worker.

(Doc. #6, *PageID* #s 46-59). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 59.

V. **Discussion**

  Plaintiff contends that the ALJ improperly weighed the medical opinion evidence, erred in citing her treatment history as an adverse disability factor, and posed flawed hypotheticals to the vocational expert. The Commissioner maintains that substantial evidence supports the ALJ's decision.

  A. **Medical Opinions**

  Plaintiff's treating pain doctor, Matthew Hodges, D.O., completed a medical impairment questionnaire in September 2017. (Doc. #6, *PageID* #s 786-87). He noted that her symptoms included neck pain radiating to her upper extremity. Upon her most recent examination, he observed hyperflexion of her bilateral upper extremities consistent with cervical cord myelopathy. He diagnosed cervical disc disruption with myelopathy and cervicalgia.

  Dr. Hodges opined that Plaintiff could stand for thirty minutes at a time and sit for sixty minutes at a time. *Id.* at 786. She could work for two hours a day. Plaintiff could occasionally lift five pounds. She could never balance or raise her right arm above shoulder level. She could occasionally bend, stoop, manipulate with her hands, raise her left arm over should level. She would need to elevate her legs occasionally during an eight-hour work day. Dr. Hodges indicated that Plaintiff's pain is moderate. He opined

that she would be off task twenty percent or more of the time due to her physical problems. She would be absent from work more than three times per month. *Id.* at 787.

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to

6

any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

ALJ Sanders acknowledged that Dr. Hodges treated Plaintiff for several years but concluded that she could not give his opinions controlling or deferential weight. Instead, she assigned his opinions "some weight." (Doc. #6, *PageID* #54). The ALJ explained that his opinion was entitled to "some weight because the record as a whole supports a sit/stand opinion due to prior knee problems." *Id.* at 55. More specifically, Plaintiff has "minimal residuals from knee problems although the record shows that she has osteoarthritis in one knee that could result in some difficulty with prolonged standing or sitting." *Id.* at 54.

The ALJ gave some reasons for not assigning Dr. Hodges' opinions weight. She discounted his opinions because "there is no objective evidence of any lumbar instability or any reason the claimant cannot work more than 2 hours per day." *Id*. Further, she found that there was no support in the record for Dr. Hodges' opinion that Plaintiff would be off task up to twenty percent of the workday or absent three times or more per month. According to the ALJ, Dr. Hodges did not explain his findings and there is no additional support in the record. Additionally, the ALJ noted that prior to Plaintiff's surgeries, she was able to perform light housework. *Id*. And she is able to drive and go to the grocery store alone to pick up small items.

Substantial evidence does not support the ALJ's conclusions. Indeed, ALJ Sanders mischaracterized Plaintiff's testimony. Plaintiff testified that she can wash dishes and dust. *Id*. at 82. But she only washes a "handful" of dishes—silverware and a

7

couple cups. *Id*. at 87. Her husband puts the dishes away. *Id*. at 82. Her husband has to vacuum because it is difficult for her to push the vacuum around. *Id*. at 82, 87. And she only dusts three pieces of furniture in the bedroom and then takes a break for fifteen to twenty minutes before tackling the entertainment center and coffee table. *Id*. at 87. In addition, Plaintiff testified that she drives "as little as possible"—"maybe twice a week." *Id*. at 71. When she does drive, it is usually to the grocery store that is less than one mile from her house. *Id.* Her husband, however, usually goes with her to the grocery unless she just needs one thing. *Id.* She has trouble driving because she cannot turn her head—or, if she can turn, it is very uncomfortable—she has to turn her whole body to look around. *Id*. at 76.

 Generally, Plaintiff's testimony supports Dr. Hodges' opinions. For instance, she testified that she can only sit for between twenty and thirty minutes before she has stand. *Id*. at 77. Likewise, she can stand for twenty to thirty minutes before she has to sit. She has pain from the middle of her back to her neck. *Id*. at 76. As a result of her neck problems, her fingers and arms get numb. *Id*. at 75. She cannot raise her arms above her head and has a lot of stiffness and soreness. *Id.*

 The ALJ discounted Dr. Hodges' opinion that Plaintiff could not balance because "[t]here is no objective evidence that the claimant cannot balance." *Id*. at 54. She notes that Plaintiff did not report any problems with balancing. But that is not correct. Plaintiff testified that she "never had good balance." *Id*. at 90. Plaintiff did, however, say that she is able to stand up without needing assistance. *Id.* Despite there being "no objective evidence" that Plaintiff's ability to balance was limited, both record-reviewing physicians

8

found that Plaintiff was limited to frequent balancing and the ALJ adopted their finding in her RFC assessment. *Id*. at 127, 151.

The ALJ rejected Dr. Hodges' opinion that Plaintiff should not lift more than five pounds because "there is no corresponding limitation from the surgeon who performed the surgeries and who has the expertise to make that determination." *Id*. at 55. The ALJ went on to explain, "although the claimant testified that she was told not to lift more than five pounds after her first neck surgery in January 2015, the record indicates that following her surgery, her surgeon imposed a twenty-pound restriction which the claimant could lift independently." *Id*. And "after her surgery in October 2016, restrictions from that surgery were lifted on November 29, 2016 and no further restrictions from her orthopedic specialist have been imposed." *Id*.

This is a puzzling reason for discounting Dr. Hodges' opinion. Both the record reviewing physicians and the ALJ concluded that Plaintiff could not lift more than ten pounds frequently. *Id*. at 51, 127, 150. If Dr. Hodges' opinion—that Plaintiff cannot lift more than five pounds frequently—is not supported by the record because her surgeons only limited her to lifting less than twenty pounds, then the record likewise does not support the record-reviewing physicians and ALJ's conclusion that Plaintiff could lift ten pounds. While her surgeons may have indicated that Plaintiff could lift more weight, Dr. Hodges has the benefit of a broader picture of all of her impairments and resulting limitations. *See* 20 C.F.R. § 404.1527(c)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds

9

and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.").

Further, Dr. Hodges' treatment notes support his opinions. For instance, in April 2017, Dr. Hodges noted that Plaintiff "has difficulty doing any form of overhead activity with the right arm. She is rather limited." (Doc. #6, *PageID* #727). "Given Nicole's myelopathic findings on exam as well as her limited tolerance for physical activity, I am not sure if she would be a good candidate for any form of employment at present." *Id*. at 728. In September 2017, Dr. Hodges indicated that he completed a form regarding her functional limitations. He explained, "She has undergone surgical fusion really from C2 down to C7. She is limited with respect to standing and lifting tolerance. I would recommend against carrying anything over 5 pounds on a regular basis. She had a disc herniation after one of her surgeries and developed cervical myelopathy. As such she has had some persistent neuropathic symptoms. I do believe that these restrictions will be permanent based on her treatment rendered to date." *Id*. at 800. These notes are consistent with and support Dr. Hodges' opinion.

The ALJ questioned Dr. Hodges' opinions because they were "based upon inaccurate information as to her compliance with prescribed medication or the severity of the claimant's pain." *Id*. at 55. Plaintiff testified that she does not take any medication during the day and takes ibuprofen PM at night. *Id*. at 77. But, according to the ALJ, "Examination notes from Dr. Hodges suggests that he believes the claimant is taking medicine he prescribed that is ineffective." *Id*. at 55. Specifically, the ALJ found that his opinions that Plaintiff would be off task twenty percent of the workday and absent from

work more than three times a month were based in part on Plaintiff's allegations of pain and his belief that she was compliant with her medication. She found that those opinions were thus negated by the fact that she did not take pain medication throughout the day.

However, substantial evidence does not support the ALJ's conclusions. When asked to identify Plaintiff's treatment, Dr. Hodges listed her surgeries, injections, and "multiple medication trials." *Id*. at 786. This does not suggest that Dr. Hodges' opinions relied heavily on her use of mediations. His notes likewise indicate that Plaintiff did not heavily rely on medication. For instance, in April 2016, Dr. Hodges noted that Plaintiff "trialed nortriptyline" but still was not sleeping well. *Id*. at 631. "She was taking gabapentin although subsequently discontinued it." *Id*. In February 2017, Dr. Hodges noted that when he last evaluated her, he recommended she take Cymbalta. She tried it for three to four weeks and then discontinued it. *Id*. at 732. In April 2017, he indicated that Cymbalta caused her to have night sweats and hot flashes and she wanted to stop taking it. *Id*. at 727. Further, he noted that she tried gabapentin in the past because she could not tolerate it due to cognitive side effects. *Id*. Shortly thereafter, he indicated that Plaintiff has started a few different medications but was ultimately taken off of them because they did not work. *Id*. at 725.

The ALJ discounted Dr. Hodges' opinion because it "is based upon the claimant's *history* of cervical procedures and not her *current residual functional capacity*." *Id*. at 55 (emphasis in original).[3] Without more, this is not a valid reason for rejecting Dr. Hodges'

---

[3] The ALJ found that "*history* of impingement syndrome and incomplete rotator cuff tear/rupture" was one of Plaintiff's severe impairments. (Doc. #6, *PageID* #49) (emphasis added).

11

opinion because her past surgical procedures can impact her abilities in the future. Further, substantial evidence does not support the ALJ's finding. Dr. Hodges identified findings from his most recent examination including, for instance, hyperflexion of bilateral upper extremities. *Id*. at 786. He likewise regularly documented Plaintiff's current symptoms. For example, he noted in September 2017 that Plaintiff had a positive Apley scratch test and positive Hawkins test for her right shoulder. *Id*. at 799. Given such findings, it is unreasonable for the ALJ to assume Dr. Hodges based his opinions only on Plaintiff's history of cervical procedures.

In sum, although the ALJ gave reasons for discounting Dr. Hodges' opinion, substantial evidence does not support her reasons. Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[4]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific

---

[4] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Nicole Manning was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

May 8, 2020

*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).